```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 ISAAC MAZOR,

                    Plaintiff,              MEMORANDUM & ORDER
                                            25-CV-1020 (EK)(JAM)
             -against-

 SION SHALAM,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Isaac Mazor alleges that his former business partner, Sion Shalam, defrauded him of $90,000, a fifty-percent ownership stake in an LLC, and an interest in property located in Linden, New Jersey. Shalam then allegedly convinced Mazor to resolve their dispute via a rabbinical arbitration process, which Mazor now contends was illegitimate. Mazor brings claims against Shalam in diversity for breach of fiduciary duty, fraud, unjust enrichment, and specific performance, and asks the Court to set aside the arbitration award.

Shalam moves to dismiss the complaint for lack of personal jurisdiction or, in the alternative, on *forum non conveniens* grounds. For the reasons set forth below, Shalam's motion is granted: Counts One through Four of the complaint are dismissed for lack of personal jurisdiction, and Count Five is dismissed for *forum non conveniens*.

# I.    Background

The following facts are drawn from the complaint, as well as the affidavits and other exhibits attached to the parties' motion papers.  *See Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) ("To resolve jurisdictional issues, [courts] may consider affidavits and other materials beyond the pleadings . . . .").[1]  "The allegations in the complaint [are] taken as true to the extent they are uncontroverted by the defendant's affidavit[]."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).  When a fact is disputed, the Court so notes but relies on Mazor's version of events.  *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).[2]

Mazor and Shalam developed a business relationship through Mazor's son-in-law, Isaac Massre.  Compl. ¶¶ 3, 22, ECF No. 1.  According to Mazor, in or around 2021, the three men agreed to form "19 E. Elizabeth Ave Realty, LLC" ("19E").  *Id.* ¶ 4; Mazor Aff. ¶ 4, ECF No. 12-4.  Although 19E was a New Jersey LLC, *see* Mazor Aff. ¶ 4, Mazor asserts that Shalam "on multiple occasions travelled to New York and he and I would

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[2] In *Cutco*, the Second Circuit observed: "Although . . . the plaintiff has the ultimate burden of establishing jurisdiction over defendant by a preponderance of the evidence, until an evidentiary hearing is held, it need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists.  Those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor."  806 F.2d at 365.

frequently speak over the telephone while I was in New York." *Id.* ¶ 5.[3]  At the conclusion of those negotiations, Mazor believed he had a fifty-percent interest in 19E, while Shalam and Massre each had twenty-five percent stakes.  Compl. ¶ 4.

In April 2021, the LLC purchased 19 East Elizabeth Avenue in Linden, New Jersey for $1.3 million, on Shalam's recommendation.  *Id.* ¶ 7.  Shalam asked Mazor to contribute $90,000 more than himself and Massre, indicating that Mazor would be reimbursed after they closed on the property.  *Id.* ¶ 8.[4] Instead, Shalam used the $90,000 to secure a $900,000 loan in 19E's name and used part of the loan to repay Mazor.  *Id.* ¶¶ 11, 13.  He then insisted Mazor be responsible for his portion of the loan.  *Id.* ¶ 12.

Meanwhile, Mazor discovered that Shalam had left him off the LLC's operating agreement, ostensibly because Mazor had previously filed for Chapter 11 bankruptcy.  *Id.* ¶ 10.  When Mazor pressed Shalam to allow him to sign the operating agreement, Shalam had Mazor's wife sign instead.  *Id.* ¶¶ 14, 16. Shalam also retaliated against Mazor by filing a lawsuit to evict the factory that Mazor was then operating at 19 East Elizabeth Avenue.  *Id.* ¶ 15.  Mazor alleges that the parties met

---

[3] Shalam disclaims any memory of meeting with Mazor in New York.  *See* Shalam Aff. ¶¶ 9-11, ECF No. 11-1.

[4] Shalam claims that Mazor "did not provide any funding for the formation of 19E or the purchase of the Property," and that it was, instead, Mazor's wife Iris who did so.  Shalam Aff. ¶¶ 6-7.

to discuss these matters in Brooklyn in September 2021.  *See* Mazor Aff. ¶ 10; *see also* Meeting Notes, ECF No. 12-5.

Ultimately, Shalam asked Mazor to arbitrate their dispute, also in New York.  *Id.* ¶ 17; Mazor Aff. ¶ 6.  Mazor says he believed the arbitration would be before a certified arbitrator who followed the American Arbitration Association Rules.  Compl. ¶¶ 17, 20.  Instead, it was conducted before Rabbi Eliezer Savitsky.  Pl.'s Ex. B, ECF No. 12-2.  Shalam and Mazor have filed two different versions of the Arbitration Agreement, only one of which — Mazor's — has Rabbi Savitsky's name filled in.  *Compare* Pl.'s Ex. B, *with* Def.'s Ex. A, ECF No. 13-1.  Both versions, however, include a provision consenting to the personal jurisdiction of the courts of the State of New York "for any action or proceeding to confirm or enforce a decree of the arbitrator."  *See, e.g.*, Pl.'s Ex. B.

Mazor indicates in his briefing that Rabbi Savitsky allowed Shalam to proceed with the eviction.  Opp'n Br. 5, ECF No. 12-6.[5]  Otherwise, he says nothing of the arbitration award, except that it was "devoid of any proper explanation for why the ruling was made."  Compl. ¶ 19.

---

[5] Page numbers in citations to briefs refer to internal pagination. Page numbers in citations to all other record documents refer to ECF pagination.

## II.  Discussion

### A.  Personal Jurisdiction

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010).  "Prior to discovery, . . . plaintiff's *prima facie* showing may be established solely by allegations."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).  And if plaintiff fails to make this showing, the court "does not err in denying jurisdictional discovery."  *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19 (2d Cir. 2015).

"We construe the pleadings and affidavits in the light most favorable to [Mazor], resolving all doubts in his favor."  *DiStefano v. Carozzi N. Am.*, 286 F.3d 81, 84 (2d Cir. 2001).  But he "may not rely on conclusory statements and must offer actual specificity in order to establish personal jurisdiction."  *Shorts v. Cedars Bus. Servs., LLC*, 767 F. Supp. 3d 96, 105 (S.D.N.Y. 2025).  And, notably, he "must establish the court's [personal] jurisdiction with respect to *each* claim asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

In assessing whether the Court has personal jurisdiction over Mazor's claims, we first ask whether Shalam

consented to jurisdiction in New York.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.").  Absent Shalam's consent, we then "apply the personal jurisdiction rules of the forum state." *Penguin*, 609 F.3d at 35.  "If, but only if," we conclude that the Court has personal jurisdiction under New York law, "we must then determine whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

Here, Shalam consented to personal jurisdiction in New York solely as it relates to claims arising from the arbitration — that is, as to Count Five.  Applying New York's personal jurisdiction rules, we conclude that we lack personal jurisdiction over Mazor's other claims.  Accordingly, we do not reach the due process analysis.  *See EGI-VSR, LLC v. Huber*, No. 19-CV-6099, 2020 WL 1489790, at *5 (S.D.N.Y. Mar. 27, 2020) ("[C]ontractual consent to personal jurisdiction eliminates the need for a separate Due Process analysis.") (collecting cases).

6

     1.    Shalam Consented to This Court's Exercise of
          <u>Personal Jurisdiction on Count Five</u>

The Court has personal jurisdiction over Mazor's claim to set aside the arbitration award.  By signing the arbitration agreement, Shalam clearly consented to "the personal jurisdiction of the courts of the State of New York . . . for any action or proceeding to confirm or enforce a decree of the arbitrator."  Pl.'s Ex. B.  This Court, "sitting in . . . diversity," "may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of [New York.]" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) (citing Fed. R. Civ. P. 4(k)(1)(A)). And consent to personal jurisdiction for purposes of confirming an arbitration award applies symmetrically to an action seeking to vacate the award.  *See D.H. Blair*, 462 F.3d at 104.

Shalam does not contend that he lacked knowledge of the forum-selection clause or that it was obtained through fraud or overreaching.  *See id.* at 103 (identifying bases for invalidating a forum-selection clause).  Instead, he argues that "enforcement would be unreasonable or unjust," *id.*, because Mazor "cannot simultaneously rely on the terms of the arbitration agreement while also maintaining that [it] is void." Def.'s Reply Br. 2, ECF No. 13.  That argument has no merit.

"[A] forum-selection clause is understood not merely as a contract provision, but as a distinct contract" and, therefore, any "challenge must be directed against the forum selection clause itself." *PIRS Cap., LLC v. Chen*, 746 F. Supp. 3d 167, 179-80 (S.D.N.Y. 2024) (collecting cases); *see also J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F. Supp. 2d 186, 191 (E.D.N.Y. 1998) ("Fraud in the inducement of the Agreement, as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause."), *aff'd*, 181 F.3d 82 (2d Cir. 1999).  It is unclear at this stage whether there exists an enforceable arbitration agreement signed by both parties.  But Shalam — against whom the forum-selection clause is being enforced — does not dispute that the parties freely consented to jurisdiction in New York.  *See, e.g.*, Oral Arg. Tr. 3:17-20, ECF No. 19 ("THE COURT: Is there a binding arbitration agreement here?  [DEFENSE COUNSEL:] Your Honor, it's our position that there is.").  For present purposes, that is sufficient.

Shalam's consent to personal jurisdiction in New York for proceedings to confirm or vacate the arbitration award does not, however, extend to Mazor's other claims.  "When determining the scope of a forum selection clause, the Court examines the substance of the claims . . . and relates the substance of the claims to the precise language of the clause . . . ."  *Miller*

*Fam. Indus., Inc. v. Ives*, No. 25-CV-2923, 2025 WL 2205937, at *5 (S.D.N.Y. Aug. 4, 2025).  Here, the forum-selection clause applies only to an "action or proceeding to confirm or enforce a decree of the arbitrator."  Pl.'s Ex. B.

Because none of Counts One through Four seeks to confirm or challenge the arbitrator's decree, those claims are clearly not encompassed by the forum-selection clause.  *Cf. Shalik v. Coleman*, 975 N.Y.S.2d 741, 743 (App. Div. 2d Dep't 2013) ("Although an agreement to arbitrate disputes in New York constitutes consent to personal jurisdiction in New York, such consent is limited to enforcement of the arbitration award or other arbitration-related proceedings.").  We must therefore determine whether there is general or specific personal jurisdiction over those claims.

2.   The Court Does Not Have General Jurisdiction

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits . . . ."  *DiStefano*, 286 F.3d at 84. Accordingly, Section 301 of the New York Civil Practice Law and Rules governs.  *See Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). "Section 301, as construed by the New York courts, permits a court to exercise jurisdiction over a [nondomiciliary] . . . if the defendant is engaged in such a continuous and systematic

course of doing business here as to warrant a finding of its presence in this jurisdiction." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) (holding same test for general jurisdiction applies to both corporations and individuals). Because "general jurisdiction is not related to the events giving rise to the suit," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013), it applies equally (or not) to each of Mazor's remaining claims.

Mazor has failed to establish a *prima facie* case for general personal jurisdiction over Shalam. Shalam is domiciled in New Jersey, *see* Compl. ¶ 2, and has not consented to jurisdiction in New York beyond proceedings related to the arbitration, as discussed above. Nor has Shalam engaged in a "systematic and continuous course of business" in New York. Mazor alleges that there were "multiple occasions" on which Shalam "travelled to New York" to meet with him, Mazor Aff. ¶ 5, but he does not provide the "factual specificity necessary to confer jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). The only specific meetings in New York that Mazor can identify are the arbitration and the meeting in September 2021. Mazor Aff. ¶¶ 6, 10. And, in any case, "[a]lleged attendance at sporadic meetings in New York is not

10

sufficient to establish general jurisdiction." *Hua Xue v. Jensen*, No. 19-CV-1761, 2020 WL 6825676, at *5 (S.D.N.Y. Nov. 19, 2020) (collecting cases).

      3.    <u>The Court Does Not Have Specific Jurisdiction</u>

In the absence of general jurisdiction, Mazor must make a *prima facie* showing that the Court has specific jurisdiction under New York's long-arm statute. *See* N.Y. C.P.L.R. § 302(a). Mazor invokes the first three bases for jurisdiction under that statute, which provides that

> a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . . ; or (3) commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*Id.; see also* Opp'n Br. 10-12. None of subsections (1), (2) or (3) provides jurisdiction here.

      a.    Section 302(a)(1) Does Not Provide Jurisdiction

To determine the existence of jurisdiction under Section 302(a)(1), "a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business

transaction." *Best Van Lines*, 490 F.3d at 246. "New York courts define 'transacting business' as purposeful activity — some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* Meanwhile, the second part of the test will be met "if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.* Here, the analysis under Section 302(a)(1) is identical for Counts One through Four because they all arise from the same set of business transactions. *See* Opp'n Br. 11 (conceding as much).

Mazor's allegations regarding Shalam's New York business transactions are too vague to support personal jurisdiction under Section 302(a)(1). Mazor avers that "[many] of the discussions that took place related to the funding for the formation of 19 E and for the later purchase of the property took place in New York," whether through in-person meetings, phone calls Shalam placed to Mazor in New York, or messages conveyed by Massre to Mazor in New York. Mazor Aff. ¶ 5. But the mere fact that certain negotiations and communications took place in New York — without any greater specificity about the role those communications played in the formation of a New Jersey LLC and the purchase of New Jersey property — is insufficient to establish that Shalam was transacting business

12

in New York.  *See, e.g.*, *Paterno v. Laser Spine Inst.*, 23 N.E.3d 988, 994 (N.Y. 2014) ("[I]t is not the quantity but the quality of contacts that matters under our long-arm jurisdiction analysis."); *PaineWebber Inc. v. WHV, Inc.*, No. 95-CV-52, 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995) ("[O]ccasional meetings in the forum state that are exploratory, unproductive or insubstantial are insufficient to establish requisite contacts with the state."); *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 824 N.Y.S.2d 353, 354 (App. Div. 2d Dep't 2006) ("[F]axing the executed contracts to New York and . . . making a few telephone calls do not qualify as . . . the transacting of business . . . but rather were merely attempts to contact the plaintiff.").

By contrast, cases in which courts have found that meetings or negotiations in New York were sufficient to confer jurisdiction under Section 302(a)(1) have involved more specific allegations about the significance of those meetings to the relevant business transaction.  *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017) (jurisdiction existed where "defendant physically present in New York on several occasions" *and* its activities "resulted in the purposeful creation of a continuing relationship with a New York corporation"); *State v. Vayu, Inc.*, 206 N.E.3d 1236, 1241 (N.Y. 2023) (jurisdiction existed where "meeting in New York, and the

13

follow up communications[] designedly and materially forwarded the negotiation").

In arguing that there is jurisdiction under Section 302(a)(1), Mazor relies heavily on the fact that the arbitration took place in New York.  But "an attempt to settle differences[] with respect to a preexisting contract . . . does not support the exercise personal jurisdiction" because it does not "demonstrate purposeful activity by the defendants in this State that was undertaken in connection with the transactions at issue."  *Mahtani v. C. Ramon, Inc.*, 562 N.Y.S.2d 695, 696 (App. Div. 1st Dep't 1990).  The parties' September 2021 meeting, *see* Mazor Aff. ¶ 10, is immaterial for the same reason — it post-dates the alleged fraud.  *Cf.* Oral Arg. Tr. 28:10-13 (denial by plaintiff's counsel that any fraud occurred at that meeting).

Therefore, Section 302(a)(1) does not provide a basis for personal jurisdiction over Counts One through Four.

b.    Section 302(a)(2) Does Not Provide Jurisdiction

Section 302(a)(2) provides for jurisdiction over a non-domiciliary defendant who "commit[ted] a tortious act *within* the state."  N.Y. C.P.L.R. § 302(a)(2) (emphasis added).  Because Section 302(a)(2) is limited to tort claims, Mazor "cannot rely on this provision to authorize specific jurisdiction for [his] contract claim," here, Count Four.  *AVRA*

14

*Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014).

As to Counts One through Three, Mazor has alleged no specific tortious act that Shalam committed while in New York. Mazor refers generally to negotiations and meetings that took place both in person in New York and by phone when he was in New York. *See* Mazor Aff. ¶ 5. But he does not aver that *all* his meetings with Shalam took place in New York. *See id.* ("Much of the discussions . . . took place in New York."). Nor does he specify when or where any particular fraudulent act occurred. *See* Oral Arg. Tr. 22:25-23:11 ("THE COURT: Do you know who was where [when the fraudulent statements at issue were made]? . . . Sounds like the answer is we don't know. [PLAINTIFF'S COUNSEL]: Yes."). In the absence of more specific allegations, we are unable to conclude that the purported fraud occurred in New York. *See, e.g.*, *N. Valley Partners, LLC v. Jenkins*, 885 N.Y.S.2d 712 (Sup. Ct. 2009) (concluding plaintiffs had failed to establish personal jurisdiction under Section 302(a)(2) because "there [were] no allegations regarding how or where the alleged fraudulent misrepresentations were made").

Indeed, in opposing the motion to dismiss, the only example of "tortious conduct in New York State" Mazor provides is "the arbitration process." Opp'n Br. 11. But again, the arbitration was an attempt to resolve the dispute underlying

15

Counts One through Three, so it cannot form the basis for jurisdiction over those claims.

> c.    Section 302(a)(3) Does Not Provide
>       Jurisdiction

Finally, Section 302(a)(3) permits jurisdiction over non-domiciliary defendants who commit tortious acts outside of New York that cause injury to persons or property within New York.  N.Y. C.P.L.R. § 302(a)(3).  Jurisdiction under this provision is subject to the additional limitation that the defendant either

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

*Id.*  Mazor fails to plead facts that establish a *prima facie* case for personal jurisdiction under this provision.

Again, Section 302(a)(3) requires a tortious act, so it does not apply to Mazor's fourth cause of action for "specific performance" — to the extent that claim is even cognizable.  *See ALS Cap. Ventures, LLC v. Lincoln Life & Annuity Co.*, No. 18-CV-4551, 2019 WL 5864172, at *4 (E.D.N.Y. Nov. 8, 2019) ("Under New York law, specific performance is an equitable remedy for a breach of contract, rather than a separate cause of action."); *Jonas v. Est. of Leven*, 116 F.

16

Supp. 3d 314, 332 (S.D.N.Y. 2015) ("New York courts routinely hold that a breach of contract claim does not constitute a tortious act and may not form the basis of long-arm jurisdiction pursuant to section 302(a)(3).") (collecting cases).

As to Counts One through Three, Mazor has failed to establish that "the original event which caused the injury" occurred in New York and that it was "not [simply] the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (defining the situs of injury). "Courts examining cases involving misrepresentations have . . . often found that the situs of injury is New York when the original reliance or other first event causing the injury," such as the disbursement of funds, "occurs in New York." *Bank Brussels Lambert*, 171 F.3d at 792. Here, the first events causing injury were Shalam's decision to leave Mazor off the LLC agreement and Mazor's disbursement of $90,000 to help purchase 19 East Elizabeth Avenue. And neither Mazor's complaint nor his affidavit identifies where the LLC agreement was drawn up or where the funds were disbursed from. Accordingly, he has not established that the situs of injury was New York.

In sum, Mazor has not provided a *prima facie* showing that supports specific jurisdiction over Shalam under New York's long arm statute for Counts One through Four.

17

B.    *Forum Non Conveniens*

Because we find that the Court has personal jurisdiction over Count Five, we must address Shalam's argument that New Jersey would be a more appropriate forum.  We agree that it is and therefore grant Shalam's motion to dismiss Count Five on the ground of *forum non conveniens*.

"The *forum non conveniens* determination is committed to the sound discretion of the trial court."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  Nonetheless, the Second Circuit has set out a three-step inquiry to "guide the exercise of that discretion."  *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005).

*First*, we determine what level of deference to give to Mazor's choice of forum.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70–73 (2d Cir. 2001).  Where, as here, the plaintiff has sued in his home forum, "plaintiff's choice of forum is generally entitled to great deference."  *Id.* at 71.  Still, "this deference is not dispositive."  *Id.*

*Second*, we assess whether there is an adequate alternative forum.  *See id.* at 73.  "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other [proposed] jurisdiction."  *Piper Aircraft*, 454 U.S. at 254 n.22.  Because Shalam is a resident of New

18

Jersey, *see* Compl. ¶ 2, he is clearly amenable to process in that state.

Finally, we balance private and public interest factors. *Iragorri*, 274 F.3d at 73. Relevant private interest factors include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Meanwhile, relevant public interest factors are judicial economy, localities' interests in deciding their own controversies, and avoidance of problems in conflict of law. *Id.* at 509.

Here, the balance of private and public interest factors favors New Jersey. Neither choice of forum is likely to generate substantial inconvenience or expense, given their geographic proximity. But at its essence, this is a New Jersey dispute: it involves a New Jersey property and a New Jersey LLC. Shalam Aff. ¶¶ 4-5; Mazor Aff. ¶¶ 4-5. It is true that the arbitration award challenged in Count Five was issued in New York. But trying that claim separately from Mazor's others — over which this Court lacks personal jurisdiction — would not be in the interest of judicial economy. Accordingly, we dismiss Count Five for *forum non conveniens*.

19

Mazor responds only that Shalam waived his ability to argue *forum non conveniens* when he consented to personal jurisdiction in New York.  *See* Opp'n Br. 13.  But the Arbitration Agreement states that "the parties submit themselves to the personal jurisdiction of the courts of the State of New York *and any court of competent jurisdiction*."  *E.g.*, Pl.'s Ex. B (emphasis added).[6]  This provision is thus better understood as "a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive forum selection clause," meaning that "normal *forum non conveniens* analysis is applicable."  *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 979-80 (2d Cir. 1993); *see also Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (similar).  Accordingly, the conclusion stands that New Jersey is a more appropriate forum for this action.

### III. Conclusion

For the foregoing reasons, Shalam's motion to dismiss is granted without prejudice to Mazor refiling in an appropriate

---

[6] The copies of the arbitration agreement submitted by both parties also include the handwritten addition of "& New Jersey" after the typed statement that the "decree of the arbitrator shall be enforceable in the courts of New York State."  *See* Pl.'s Ex. B; Def.'s Ex. A.

jurisdiction.  The Clerk of the Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    July 6, 2026
          Brooklyn, New York